**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                         No. 4:12CR00041 JLH

ROBERT JERROD CASTLEMAN
and BOB SAM CASTLEMAN                                                      DEFENDANTS

**OPINION AND ORDER**

Bob Sam Castleman has moved to suppress certain items seized on April 12, 2011, as evidence of methamphetamine manufacture, and Robert Jerrod Castleman has joined in that motion. The issue is whether the items were seized in violation of the Fourth Amendment's protection against unreasonable searches and seizures.

Officers obtained a search warrant for Bob Sam's residence that authorized the search of premises, persons, vehicles, and out buildings at the residence for marijuana, methamphetamine, and drug paraphernalia consistent with the use or manufacture of marijuana or methamphetamine. Document #272-1. The officers executed the warrant and searched the residence. During the warrant's execution, officers followed tire tracks that led away from the residence and up a hill. About 200 yards from the residence, officers found an open bed trailer containing trash bags. Document #272, Exh. C. The trash bags contained an empty can of lacquer thinner and camp fuel, two components used to manufacture methamphetamine. *Id.*, Exh. D. Nearby, the officers found a bag of salt, and under a piece of plastic near bales of hay, they found a gray plastic tote containing tubing, a funnel, lye, plastic pitchers, gloves, and other items used to manufacture methamphetamine. *Id.*, Exh. E. Lying next to the plastic tote was an empty tank of the type used to store anhydrous ammonia. *Id.*, Exh. F. These items were seized as evidence of methamphetamine manufacture.

The Fourth Amendment protects against unreasonable searches of "persons, houses, papers, and effects." U.S. Const. Amend. IV. An "open field" is not a "house" or "effect" for Fourth Amendment purposes, so the Fourth Amendment does not protect against a governmental intrusion upon an open field. *United States v. Dunn*, 480 U.S. 294, 303-04, 107 S. Ct. 1134, 1141, 94 L. Ed. 2d 326 (1987) (citing *Oliver v. United States*, 466 U.S. 170, 177, 104 S. Ct. 1735, 1740, 80 L. Ed. 2d 214 (1984), and *Hester v. United States*, 265 U.S. 57, 59, 44 S. Ct. 445, 446, 68 L. Ed. 898 (1924)). "The term 'open fields' may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither 'open' nor a 'field' as those terms are used in common speech." *Id.* at 304, 107 S. Ct. at 1141 (quoting *Oliver*, 466 U.S. at 180 n.11, 104 S. Ct. at 1742 n.11); *see United States v. Mathias*, 721 F.3d 952, 955-56 (8th Cir. 2013).

The parties agree that the area searched was not part of the residence's curtilage. And the parties have stipulated to the following facts:

- The Castleman property is approximately 262 acres enclosed on three sides by a 5-strand barbed wire fence and on the fourth side by the Eleven Point River;
- The property is posted;
- The area searched (that is the subject of the motion) is not visible from outside the fence or the other side of the river;
- The area searched is not visible from the residence or its curtilage;
- In order to view the contents of the trash bags, the officers had to open the trash bags; and
- In order to view the contents of the gray plastic tote, the officers had to open the tote.

As the stipulations and photographs show, the general area in which the officers were searching was an unoccupied, wooded area. That general area was therefore an open field and no warrant was necessary for the officers to search it. *Cf. United States v. Pennington*, 287 F.3d 739, 745 & n.2 (8th Cir. 2002).

Bob Sam argues, however, that the items searched and seized were not in plain view in the open field and therefore could not be searched without a warrant. "[T]he open fields doctrine only allows a search of what is in plain view in the open field. It does not justify a warrantless search of a man-made enclosure found in an open field." *Id.* at 745. In *Pennington*, officers who were nearly three hundred yards away from a modular home found a trash bag containing starter fluid cans and used coffee filters. They also saw a ventilation pipe protruding from the ground, and they found a tunnel with a wooden pallet covering the entryway and an aluminum ladder extending down from the entryway into the tunnel. *Id.* at 745. The officers investigated the tunnel and found an anhydrous ammonia tank and a camper, which were not visible from the open field's surface. *Id.* Pennington argued that the search of the tunnel, or underground bunker, was unlawful, but the Eighth Circuit held that the district court did not err in denying the motion to suppress, due to the location of the tunnel in an open field, the visible entryway, and no lock or door impeding access. *Id.* at 746.

Here, the items searched and seized are more analogous to the trash bag in *Pennington* that was not even challenged as unlawfully searched and seized than to the items found in the bunker that were challenged but still not unlawfully searched and seized. If items found twelve feet underground in a tunnel can be considered in plain view (because the unlocked entryway was in plain view), then the trash bag and plastic tote are easily considered in plain view.

3

That the trash bags and plastic tote were in plain view in an open field does not, however, end the inquiry. If Bob Sam had a legitimate expectation of privacy in the trash bags and plastic tote, then the officers may not have had authority to search inside of those objects. *See United States v. Stallings*, 28 F.3d 58, 60 n.3 (8th Cir. 1994) ("We agree with Stallings that the 'open field doctrine' is not completely dispositive in this case because the real question is not the officers' authority to be upon and search the field but instead their authority to search the zipped tote bag."). A two-part test determines whether a person has a legitimate expectation of privacy in a place searched or object seized: "(1) whether the petitioner has asserted a subjective expectation of privacy, and (2) whether the petitioner's subjective expectation is objectively reasonable." *Id.* at 60 (quoting *United States v. Kiser*, 948 F.2d 418, 423 (8th Cir. 1991)). The first part of the test is a question of fact; the second part is a question of law. *Id.* "The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area [or item] searched." *Id.*

Under the first part of the test, the only evidence that Bob Sam produced to show that he sought to keep the trash bags or plastic tote private or thought that they would be private is that the 262 acres were fenced with barbed wire and posted. *Cf. id.* at 61. For purposes of ruling on the motion to suppress, the Court will assume that Bob Sam has proven that he had a subjective expectation of privacy in the place searched.

Even so, Bob Sam cannot meet the second part of the test. In *Oliver*, the area searched was secluded property surrounded by woods, fences, and embankments, with a locked gate and "No Trespassing" signs posted at regular intervals. *Oliver*, 466 U.S. at 173-74, 104 S. Ct. at 1738-39. The Supreme Court held that these protections were insufficient to create a legitimate expectation of privacy.

> There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be. It is not generally true that fences or "No Trespassing" signs effectively bar the public from viewing open fields in rural areas. And both petitioner Oliver and respondent Thornton concede that the public and police lawfully may survey lands from the air. For these reasons, the asserted expectation of privacy in open fields is not an expectation that society recognizes as reasonable.

*Id.* at 179, 104 S. Ct. at 1741-42. In *Stallings*, Stallings left a plastic tote bag "unattended in an open field in which he had no possessory interest with no apparent means of restricting access to it." *Id.* The court found that Stallings had no objectively reasonable expectation of privacy in the bag because he had knowingly exposed the bag to the public, even if there was only a theoretical possibility that "animals, children, scavengers, snoops and other members of the public" would happen upon the item. *Stallings*, 28 F.3d at 61 (quoting *Wabun-Inini v. Sessions*, 900 F.2d 1234, 1242 (8th Cir. 1990)) (citing *California v. Greenwood*, 486 U.S. 35, 40, 108 S. Ct. 1625, 1628-29, 100 L. Ed. 2d 30 (1988), and *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed. 2d 576 (1967)).

Bob Sam argues that the expectation of privacy is heightened here because the evidence seized was on his farm, which is enclosed. The question of who owns the property of an open field – and who has lawful access to that property – does not seem material to whether an expectation of privacy exists. *See Dunn*, 480 U.S. at 304, 107 S. Ct. at 1141 ("[T]here is no constitutional difference between police observations conducted while in a public place and while standing in the open fields."); *Oliver*, 466 U.S. at 181, 104 S. Ct. at 1742 ("[A]n individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers."); *Mathias*, 721 F.3d at 957 (concluding that a fence around a backyard does not evince an objective

expectation of privacy); *United States v. Hatfield*, 333 F.3d 1189, 1197 (10th Cir. 2003) (defendant's ownership of the open field did not create a reasonable expectation of privacy, even though officers trespassed on it);[1] *United States v. Douglas*, No. 11-CR-0324 (PSJ/LIB), 2012 WL 87717, at *2 (D. Minn. Jan. 11, 2012); *see also California v. Ciraolo*, 476 U.S. 207, 213, 106 S. Ct. 1809, 1812-13, 90 L. Ed. 2d 210 (1986).

Finally, Bob Sam does not argue or present evidence to show that the trash bags or the plastic tote were or contained his personal effects. *Cf. United States v. Castellanos*, 716 F.3d 828, 834 (4th Cir. 2013) (burden of proof is on the defendant to establish ownership or possessory interest).

## CONCLUSION

For the reasons stated, the motions to suppress are denied. Documents #269, #275, #278.

IT IS SO ORDERED this 11th day of December, 2013.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[1] Bob Sam cites to *Hatfield* apparently to support the point that the officers did not have a right to be anywhere on Bob Sam's farm except for the residence and its curtilage, and anything seen from somewhere outside of these areas would not be in plain view and would not be a constitutional search. *Hatfield* does not support this point. The court in *Hatfield* held "that police observation of a defendant's curtilage from a vantage point in the defendant's open field is not a search under the Fourth Amendment" and that Hatfield did not have an objective expectation of privacy even in the curtilage behind his house "with respect to visual observations made from an adjoining open field." *Hatfield*, 333 F.3d at 1198.